May it please the court. My name is Max Beatty. I represent the USACM Liquidating Trust. Now, Mr. Diamond, who's here with me today, had also entered an appearance previously, but I'm going to be the only attorney who argues today on behalf of the trust. The district court erred in its opinion by ignoring the fundamental purpose of in peri delicto and the realities of the situation of our case in direct violation of Nevada law. In addition, the court mispredicted Nevada law on the exception of Sol Acker by ignoring the presence of minority shareholders who were innocent of any wrongdoing. Now, 11 U.S.C. 541A creates the bankruptcy estate, but the Supreme Court has been clear that it is in fact state law that defines the property of the estate, which would include the defenses to those claims. And that ruling has existed as far back as Butner v. United States from 1979. The district judge was flying a little blind on this because the Nevada Supreme Court came out with more clear opinions after the decision, right? To a certain extent, yes. There was an opinion, which was the Glenbrook case, that came out after the decision in this matter, and it did make some modifications to the law of in peri delicto and to imputation, making it clearer. However... It also cited a Newark case, which gives further light on where Nevada may be going. The Nevada court did cite the case of Kirshner, which is decided under New York law, but that was in the limited arena of the adverse interest exception. When the court was discussing the sole actor exception, it actually cited to a different case, In Re Cvi, which supports our proposition. In addition, despite the fact that Glenbrook found imputation was proper, that court nevertheless remanded the case for an analysis of the equities to determine in peri delicto, whether or not in peri delicto applied. That means even though they found imputation was proper, that still didn't mean that this equitable defense would necessarily apply to the facts of those cases. And that's because Nevada state law says when applying in peri delicto, you should not be so enamored with the Latin phrase as to blindly apply it to all instances of illegality. But instead, you must look to the fundamental purpose of the rule, and you must look to the realities of the situation. So when I looked at the cases, the Nevada cases talking about the SHMRAC exception to the general rule about the availability of the peri delicto defense, it appeared that all four of the factors had to be present in order for the SHMRAC exception to be applicable, particularly in the cases of Loomis and Locken seemed to indicate all four factors have to be present. Now, I know you argue to the contrary, but what case supports your interpretation? Well, as a preliminary matter, I think it's important to utilize the words or to examine the words utilized by Glenbrook itself, the most recent opinion, and it refers to it as factors, not elements. Factors are generally balanced, whereas elements would be a requirement to hit each one of the four in order for in peri delicto not to apply. In addition, though they're regularly referred to as the SHMRAC factors, the case that actually first imported the idea was McGill v. Lewis, which predated. And there, the Court really only focused to the unjust enrichment of the defendant in that action in finding that in peri delicto doesn't apply. So I think when you look at the plain language along with McGill, you can see that these are indeed factors to be balanced. In addition, other courts, including the Bankruptcy Appellate Panel for the Ninth Circuit, have looked at it and referred to it as a four-factor balancing test. And that is the appropriate way to look at these because, of course, they are factors. In addition to that, when Glenbrook analyzed IPD after the district court came out with its opinion, it did more than just reference the four factors. It actually referenced the case of Bateman v. Eckler, a United States Supreme Court that dealt with the question of in peri delicto, and noted there are other policy concerns at issue. That suggests that in addition to these four delineated factors, you must consider public policy in applying in peri delicto to any given case. Nevada's case law is clear. IPD is a case-by-case analysis. And we submit that when you look at the four factors, balance them appropriately and consider public policy, IPD doesn't apply. So the district court thought that because the defendant was not the most guilty one, because the corporation was much more guilty than the auditor, that that was sufficient for Deloitte to be able to raise the peri delicto defense. What's wrong with that? Why doesn't that make sense in this context? Well, there's a couple of issues with that, first being that the district court really did treat it as that elemental test and only focused on that one issue. Secondarily, when you look at Nevada law and you'd say, well, let's compare USACM's liability to Deloitte's, that ignores the realities of the situation. That ignores the fundamental public policy at issue. The realities of the situation are the company's in bankruptcy. The plaintiff here is the USACM Liquidating Trust. And the only entities or persons who are going to benefit from any recovery from Deloitte and Touche are going to be the victims of the fraud itself. Those are the realities, and that's what Nevada law would have you require or would require you to examine. So, but in bankruptcy, the opposing counsel argues the trustee just steps into the shoes of the company. I know you argue otherwise, relying on FDIC v. O'Melveny, which they haven't had a chance to address yet. But I presume the argument would be that FDIC v. O'Melveny is just limited to receiverships. Why aren't we bound by all of the bankruptcy laws saying the trustee doesn't have any more rights than the company does? Well, I don't think that we're asking you to actually abandon that rule. It's true the trustee steps into the shoes of USACM, which means that inquiry delicto is available as a defense, and it has been raised. But whether it's applicable to this case is a completely different question. 541A doesn't discuss nor does it analyze individual state law defenses. And, again, Butner has made clear that, no, we leave this to state law. That means, depending upon what law applies, a different analysis can come out. Here, because Nevada requires us to look at the realities of the situation and the fundamental purpose of the doctrine, we see it's flexible, and those equities balance in this case in favor of allowing this matter to go forward. Now, if you were in a different state, the result may be greatly different. For instance, New York and Kirshner, that was pointed out before, they characterize their version of inquiry delicto as inflexible and not subject to be weakened by exceptions. That cannot be more, farther different than a court who's directing, the Supreme Court who's directing other courts, consider this a flexible doctrine. Make sure you consider the fundamental basis for the rule and also the realities in this situation. The Nevada Supreme Court in that Glenbrook decision, I mean, when it was talking about imputation, seemed to favor imputation. It took the strictest test. They have to have total abandonment of the corporation's interest. So it seemed to not be concerned about imputation of the wrongdoer's actions to the corporation and was happy to apply the par delicto doctrine. So taking that guidance, doesn't that suggest that the Nevada state law tips more towards enforcing or allowing the par delicto defense? Well, when you actually look at the structure of the opinion itself, what you see is the court begins with a question of imputation. And that's important because in the corporate context, you have to first decide if the plaintiff is a wrongdoer. That's where you see the citation to Kirshner. It's solely in the context of the adverse interest exception. However, once the court decided imputation was proper in that matter, it still went to the second question of does in par delicto apply. And what that means is they found the plaintiff is a wrongdoer through the fiction of imputation, but nevertheless, we consider the realities of the situation. And one of the issues is in the manner in which the district court looked at it, he looked at the legal fiction of imputation rather than the actual realities of the situation. Again, that's what Nevada counsels that we should do, and that is the error that was made in the in par delicto analysis. If there is imputation, does the statute of limitation bar the trustee's suits? No, it doesn't. And with regard to the statute of limitations, the district court made another error. But to be clear in my argument, it's under either situation, statute of limitations is not an issue. If imputation is improper, the statute itself shows that the trust has good claims because of the embedded discovery rule and just the nature of the statute. However, if the district court was correct in finding that the wrongdoers were so dominant that they were the sole actor, then the adverse domination doctrine would control, and that would toll the case. Has Nevada adopted that test, that tolling factor? Nevada has not specifically adopted adverse domination. But as the cases we cited in our brief show, Federal courts who sit in a State where the highest court of the State or the State itself hasn't addressed that issue have regularly found that adverse domination does apply and would be adopted, and that's because it's a corollary of the discovery rule. We can already see the discovery rule embedded into the limitation statute, and therefore, it's reasonable to assume it's very – that the Nevada Supreme Court would adopt that doctrine just as other States have done. I see I'm running close to the end of my time. I'd like to reserve the rest for rebuttal. Thank you. Good morning, Your Honors. May it please the Court. This case presents solely issues of Nevada law that were correctly decided by an experienced Nevada Federal District Judge in a carefully reasoned opinion. There is no basis to reverse, and there are multiple alternative grounds on which to affirm. We've heard again this morning an appeal to policy, and that's telling, and it's wrong at multiple levels. First, and most fundamentally, the Nevada Supreme Court has made the policy decisions in the Glenbrook case and before that. In the Glenbrook case, as Your Honor pointed out, the Court emphasizes the policy considerations in favor of a broad imputation rule, and in particular, the need to incentivize corporations to supervise their own agents. Second, it adopted the New York Kirshner decision, which Judge Wallace referred to, and that, in turn, was a lengthy discussion of policy. It was a frontal assault on the policy issues, raising the Pennsylvania decisions that are raised in the briefs here, decisions from other courts around the United States. Truly, there is a civil war going on between Pennsylvania and New York. But as far as the Kirshner decision, your adversary says that so far the Nevada Supreme Court has only taken a piece of that, and that we can't take the full Kirshner case as the way of the future of the Nevada Supreme Court. What's your response to that? Your Honor, that's not so, because the Kirshner decision addressed the fundamental policy attack that's being advanced here, which is that it's unfair in the situation of a bankruptcy to have impari delicto or other imputation-driven doctrines prevent the bankruptcy estate from bringing claims. That's exactly what was issued in Kirshner. Now, in Kirshner, the narrower issue was the adverse interest exception, and it addressed that at length as well. And it's true Kirshner did not address the sole actor rule. But the decisions that the Nevada Supreme Court cites in its discussion of the sole actor rule are very favorable to the defense side. They are not the decisions that, for example, say that the presence of an innocent decision-maker is itself sufficient to defeat imputation. Assuming we got over the imputation issue and said, yes, the wrongdoers can be imputed to the company, opposing counsel was focusing on the SHMRAC exceptions to the general rule that the defendant could raise impari delicto defense. And did the district court err in focusing only on a single factor on, I guess it was, who was the most guilty? Should the district court have expressly considered all four factors? Absolutely not, Your Honor. As Your Honor pointed out, the decision is a four-factor test, and it is conjunctive. It has the word and, not or, between the third and fourth factors. And, of course, we need to ascertain what the Nevada Supreme Court would most likely hold on an issue of State law, and that is the language they have used over and over and over again. In any event, it wouldn't matter here, Your Honor, if it were a balancing test, because in this case, three of the four factors tip so overwhelmingly in favor of impari delicto. This is not like the Glenbrook case, which, as Your Honors appreciate, was a battle over the U-Haul company, and it was amongst brothers. And it was not a case where you had a company dominated by fraudsters, and the company is now trying to sue an outside auditor. That's this case. The Glenbrook case was an intra-family battle in which the balance of equities was not so clear. And so, understandable, the Supreme Court would say, okay, I'm going to send that back down and let that get sorted out. Here, this is not a closed case under any interpretation of SHMRAC. You've got Messrs. Hanges and Milanowski, who are fraudsters and or criminals. You've got them as absolutely indisputably the principal wrongdoers. You've got an outside auditor who is not a fiduciary being blamed for the collapse of a company that was, in all reality, Messrs. Hanges and Milanowski. And that's inequitable. And that's what Kirshner says. Kirshner analyzes the equities of victimizing, on the one hand, innocent stakeholders in a bankrupt company, on the one hand, and on the other hand, innocent stakeholders in an outside accounting firm such as Deloitte. And it says there's no justice in allowing the innocent stakeholders in a bankrupt company that has failed because of fraud to now shift their losses to the innocent stakeholders of an outsider. If your opposition had time, what they would say is, no, no, they're not home free with clean hands because they had this meeting with the state auditors. And if they'd just blown the whistle, then my clients would never have had a problem. What's your response to that? Well, there's a simple factual response to that, Your Honor, and that is that after that meeting, the FID, as it's called, the Financial Institutions Division, issued a report, which is in the record. It's ER 000283. And in it, it says that the $7 million borrowed from the fund, that's what the appellants are talking about, have not been adequately explained by the company. Have not been adequately explained by the company. That's the finding. They weren't assuaged. What they go on to say is, but they're not being pursued at this time in order to finalize this report. So this is not a case of assuaging or concealment. And, by the way, there can't be concealment here for purposes of the statute of limitations when the company, in the form of Messrs. Hanges and Milanowski, who were the company, knew full well of the fraud. Now, they're saying the adverse domination rule would toll the statute of limitations. Nevada has been silenced, to my knowledge, and they agree. So how do we know whether that would apply or not? Your Honor, again, we have to try to ascertain what's likely here, and it's not likely in the face of a very detailed statutory scheme on statute of limitations. There are multiple provisions, which Your Honors have seen, that very carefully lay out the roles of discovery rule, concealment, and so forth, that now a new exception would be added on. And the cases that are cited by appellant are cases involving fiduciaries, not accountants. It would be a unique holding for the Nevada Supreme Court to go in that direction, not just in Nevada, but as far as we can tell, in the United States. So if adverse domination doesn't apply, and we agreed with you about imputation, then the statute of limitations would just eliminate. We could stop there. Is that correct? Yeah, that's absolutely right, Your Honor. And then, of course, we don't even need to deal with SHMRAC or IMPERI DELICTO. It's just a clean line from imputation through statute of limitations. And there is a lot of common sense to that. We are dealing with a case in which Deloitte's last audit opinion was on the 2002 financial statements. There were four intervening years between then and the bankruptcy, four years in which another audit firm was auditing this company. And yet, at bottom, this is a case attempting to blame Deloitte for what happened years later when the company went bankrupt. So it is a classic statute of limitations situation we submit. You didn't get the opportunity to address their argument about FDIC v. O'Melveny and whether that applies here. Can you briefly address that? Absolutely. Even apart from the waiver, Your Honor, this Court has never extended O'Melveny beyond the holding of the case, which is a bank receiver, not a bankruptcy trustee. And no circuit has ever done so. Five circuits have addressed the issue. All have concluded that O'Melveny should be restricted to its facts, that is, a bank receiver, and not extended to a bankruptcy trustee. Why should a receiver get a better claim than a bankruptcy trustee? There may not be any particularly good reason for that, Your Honor. The O'Melveny decision is certainly a controversial decision, has been much criticized. But I think the original notion was that in the context of a bank trustee was a heavily regulated context, statutory scheme designed to protect creditors in various ways. And in that context, the Court got over the hump and said, okay, that's enough. In the trustee situation, absolute unanimous body of law saying that the trustee stands in the shoes of the company. This is not the creditors here before you, Your Honors, notwithstanding the attempt to paint it that way. The creditors did not have any claim against Deloitte, never brought any claim against Deloitte, and this is the company standing here in court trying to blame the outside auditor, not the creditors. There are other cases in which creditors have sued the auditor. Absolutely, Your Honor. Absolutely there are, and State law provides protections for that. But that's not this case. This is the company standing before you attempting to sue the auditor. Here you would acknowledge, I guess because it doesn't cost you anything, that a creditor might have, forgetting limitations issues, a creditor might have brought a claim based on the fact that they were encouraged to extend credit by virtue. Absolutely, but then they'd run into the facts, which is that Deloitte audited financial statements a long, long time before the bankruptcy, and so there would be serious issues of reliance, and I'm sure that's why people didn't bring those claims. If I might, Your Honor, let me address the question of whether Glenbrook somehow established a different standard. We believe it absolutely did not. And, in fact, Judge Pro, having been in Nevada a long time, actually very correctly predicted what the Supreme Court would do. And, in particular, the key issue, the threshold issue, was whether the presence of innocent decision-makers would, in and of itself, be an exception to imputation. There were a couple of stray courts around the United States that held that. Judge Pro said no, and I don't think our State would do that. And he was absolutely right. And, second of all, there are decisions that you can point to that have extreme language about what an innocent decision-maker might or might not be in the context of the sole actor rule. And what Judge Pro concluded, and the Nevada Supreme Court then concluded, is that the only role of, quote, So they're evidentiary issues. It's not an exception in and of itself. It's not a broad whole in the sole actor doctrine. It's just something to be considered. And all the courts, including the ones that are cited in Glenbrook itself in that part of the opinion, that take that kind of approach, do not take the approach that appellants have taken in their brief. The appellant's position is if there's even a single innocent shareholder, director, or employee, that means sole actor can't apply. None of those courts take that position, and that wouldn't make any sense. In order for a so-called innocent decision-maker to be relevant, as the Nevada Supreme Court says in Glenbrook, they have to be a, quote, corporate decision-maker. That's the phrase they use. So what about, like, Buckley is a director, and so presumably has some, at least technically, decision-making power. I know there was his testimony that he was just a figurehead and didn't really have any actual control. Are we looking at decision-making authority as a practical matter, or how should we interpret that? I think it is – it has a practical component, absolutely, Your Honor. And all the cases that go through this type of analysis look at the practicalities of the situation. But beyond that, there's a legal component to it here. No – no board of directors meeting could even be held without Messrs. Hanges and Milinowski. And as a result, Mr. Buckley never even attempted to exercise any authority as a director. He never attended, as the record says, until the day he resigned. He never attended. So when he says he played no role, and he also says, and it's quoted in Judge Pro's opinion, that Hanges and Milinowski were, quote, in control of everything, close quote, that's indisputable. That was the reality. He also said he had no authority to override their decisions. And he didn't even show up. So in those kind of situations, the cases that have looked at it have said that's not corporate decision-making authority so as to break the unity, another word used in Glenbrook, between Hanges and Milinowski on the one hand and the corporation on the other. A stockholder would not be sufficient under that analysis. No, sir. And to be absolutely clear, appellant's position is if you owned one share of stock, you would automatically be an innocent decision-maker so that you could break the unity. Well, there was a wife that had some stock that she thought was for her estate, so she was there, but there's no indication that she paid any attention to the business side. Correct. So the cutoff is being able to make decisions. Absolutely. To have authority, and the converse is it is not enough simply to be able to bring a shareholder derivative suit. And the cases that are cited by appellant, not one of them says that that's relevant except in the context where they also are discussing what is actual corporate authority. So it's a throw-in factor, for example, in that Freedman's case out of Georgia where there was a special litigation committee that expressly had decision-making authority and then the court throws in a reference to a derivative suit. That's not the argument that's being made here where it's said to be sufficient if you have a single shareholder who could in theory bring a shareholder derivative suit. If that were true, again, you would never have application of sole actor if you had a shareholder who had even a single share. Do the cases treat this as a fact? Those who do follow it, do they treat it as a factual issue? That is, is having the share enough or being active enough? If the situation is that his wife has shares, it would be very difficult to show factually that she's going to jump downtown and file a lawsuit. If someone else held the shares, there might be a view. But I'm just wondering at the test, if you accepted, I understand your argument, but if you accepted the shareholder rule, would there also have to be a factual component that is somewhat logical that they would do it? Yes, Your Honor. And so as a result, what you typically see in these kind of cases is, was the person also in management? That's where the decision-making authority of a corporation is exercised in management, senior management in particular, and at the board level. And, you know, a figurehead director is not enough to break that unity. Low-level employees who concede uniformly and unanimously, they did not have any ability to override the senior officers, that is not enough. I think my time is up. Thank you, Your Honor. Thank you. May it please the Court. I'd just like to address a few of the issues that were discussed by Deloitte. First of all, his argument led off with the public policy of needing to incentivize corporations to select good management. That factor simply doesn't apply in this instance. Again, looking to the realities of the situation, no incentivization will occur by not allowing a judgment against Deloitte, because no shareholder, Milinowski's, Hanshi's, Wise, Hamilton, none of them will ever recover. All sort of deterrent effect that would occur has already occurred, so that isn't a factor. Second of all, I believe the discussion of Kirshner is fundamentally flawed, and the error that D.T. Deloitte made in this instance in his argument is confusing in prairie delicta with imputation. Specifically, there's a discussion about whether or not it's fair to saddle shareholders or interested parties of the auditor with some of the blame. That was within the discussion of in prairie delicto, not within imputation, and that's an important distinction, because, again, Nevada followed Kirshner solely on the total abandonment standard, not on the analysis of in prairie delicto and its equitable application. And, of course, again, New York said in the New York Court of Appeals opinion, it's an inflexible doctrine. It's not surprising that they determined it was okay to apply it despite any equitable consideration. Nevada is the polar opposite and considers these matters on a case-by-case basis. Moreover, Kirshner himself, the New York Court of Appeals opinion, isn't a unanimous decision. And, in fact, the dissent discusses the issue of public policy in stating that there the majority got it wrong. In fact, it was plurality three-two, I believe. And the issues that were discussed in the dissent were the exact issues that we raised here. And if that led judges to believe in New York, where the doctrine is inflexible, that it shouldn't apply, it certainly has a different outcome under Nevada law. I wish they'd follow some of my dissents, too, but usually we have to look at the majority. Correct. If you were applying New York law, but we're not here, we're applying Nevada law, the only reason I bring that up is to point out that there's a difference of view on the court. Exactly. I see. Another issue that was raised is the power of the shareholders to effect change. To be clear, shareholders are corporate decision-makers. They certainly are. There are votes that are made by the shareholders which cause a corporation to take action. So certainly by the ability to cast votes, the ability to bring a shareholder derivative action to stop wrongful conduct is indeed a power, a power to make decisions. That issue I'm interested in, because is it just being a shareholder, or would the Nevada court also look of whether it makes any difference? That is, for example, in this case, where a wife of one of the bad guys has some shares, and there would be a factual determination whether it would make any difference because she'd never get downtown to do anything about it. In your view, is the factual context valid at all in the argument? I'd like to answer your question, but I see I've got five seconds left. Can I be permitted to answer? Of course you can. It's my question. Thank you. In this instance, the actual language used by Glenbrook provides major insight into that very question. And what Glenbrook says in citing CBI is, Pursuant to the sole actor rule, the adverse interest exception will not preclude imputation if the agent is the sole agent or sole shareholder of a corporation. The rule also applies when there are multiple owners and managers who are each engaged in the fraud against the corporation. It's multiple owners and managers who are all engaged in the fraud. The language provided by the Nevada Supreme Court provides you with the answer that they would come to, and that is the presence of these shareholders as decision makers renders sole actor inapplicable because their existence makes it such that the wrongdoers and the companies aren't, quote, one in the same. For these reasons, this Court's opinion should be reversed for amendment. Thank you very much for your time. Thanks to both of you for your arguments. Well argued. Well argued. The case of the SACM Liquidating Trust v. Deloitte & Touche is submitted. The next case, Higher v. Mount Diablo Unified School District, is submitted on the briefs.
judges: Garbis, Wallace, Ikuta